IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF<br>ARMANDO LLAMAS SIERRA<br>_____ / | No. Misc. S-08-0039 EFB<br><br>FINDINGS OF FACT & CONCLUSIONS OF LAW RE: EXTRADITION |

This matter is before the court on a request by the Government of Mexico to the United States for the provisional arrest and extradition of Armando Llamas Sierra (hereafter "Sierra") to face pending charges in Mexico for homicide. An extradition hearing was held on July 2, 2008. Jill Thomas, Assistant United States Attorney, appeared on behalf of the United States. Timothy Zindel, Assistant Federal Defender, appeared on behalf of Sierra. After hearing, the court enters the following findings of fact and conclusions of law.

This court has jurisdiction over these proceedings pursuant to 18 U.S.C. § 3184. Crim. L.R. 7-1(b)(13); E.D. Cal. L.R. 72-302(b)(8). *See also Ward v. Rutherford*, 921 F.2d 286 (D.C. Cir. 1990) (Ginsburg, J.) (rejecting constitutional challenge to magistrate judge's authority). Sierra was arrested on March 28, 2008, pursuant to a complaint and provisional arrest warrant issued by this court on March 27, 2008. The defendant was brought before the court and this court has personal jurisdiction over him.

The focus of these proceedings is not to determine the guilt or innocence of the person sought by the foreign government. Rather, the purpose of the hearing is to determine whether

1

Sierra is subject to surrender to the Government of Mexico pursuant to the terms of an existing and applicable extradition treaty. 18 U.S.C. § 3184; *Ornelas v. Ruiz*, 161 U.S. 502 (1896). To determine whether Sierra may be extradited, this court must determine whether: (1) there are criminal charges pending in the requesting country; (2) the charges are included under the treaty as extraditable offenses; and (3) there is probable cause to believe that a crime was committed and that the person before the court committed it. *United States v. Barr*, 619 F. Supp. 1068, 1070 (E.D. Pa. 1985). It is undisputed that an Extradition Treaty was, at the time of the offense, and currently is in full force and effect between the United States and Mexico. 31 U.S.T. 5059 (1980 WL 309106). It is also undisputed that the Treaty includes within the covered crimes the offense for which extradition is sought here, i.e., homicide.

The Government of Mexico has complied with the requirements of the Treaty by submitting, within 60 days of the arrest, a formal request for extradition together with supporting documents.[1] The supporting documents demonstrate that there are criminal charges pending in Mexico against Sierra for the homicide of Raul Perez Aranda. Thus, the court's inquiry centers on the question of whether there is competent evidence sufficient to establish probable cause to believe that the charged offense has been committed and that the person sought by the Mexican Government is the person who committed it. For the reasons set forth below, the court finds that there is.

The evidence before the court includes eyewitness statements taken from Marcelo Perez Llamas and Maria Guadalupe Aranda de Perez, the parents of the victim, Elvia Garcia Cortes, the widow of the victim, and Aurora Diaz Hernandez, a sister-in-law of the victim. The statement of the victim's mother, Ms. Aranda de Perez, was taken on July 23, 1996, the day following the shooting death of her son. Under penalty of making a false statement, Ms. Aranda de Perez affirmed that she saw Armando Llamas Sierra carrying a shotgun at a family gathering

---

[1] The formal request was submitted to the United States Department of State on May 23, 2008.

on July 22, 1996. She further affirmed that she saw Mr. Sierra start shooting and that she and her son ran toward the house. She stated that Sierra fired again, hitting her son, Armando Llamas Sierra, in the head and killing him. Certificate of Documentary Evidence, Appendix I (hereafter "Appendix").

Ms. Aranda de Perez provided a supplemental statement on August 13, 2007, eleven years after the shooting. Appendix H1. She affirmed in that statement that she was able to positively identify Mr. Sierra from a series of photographs as the person who shot and killed her son. She further affirmed that she was able to identify him "completely and without any doubts . . . since I know him because he is the nephew of my husband and he lived at the same ranch where we live now, and I point him out as the person who killed my son Raul Perez Aranda." *Id*. She again attested that Sierra arrived at a family gathering "carrying a shotgun with which he shot four times, shooting my son Raul Perez Aranda first in his chest and then, with another shot in the head, doing this at a very short distance; during those shots I also was wounded . . . ." *Id.*

Similarly, the victim's father, Marcelo Perez Llamas, provided a statement August 13, 2007, attesting that he also saw the shooting. Appendix H1. He stated that he could identify Sierra as the shooter "without any doubts because I know perfectly Armando Llamas Sierra, since he is my nephew, the son of my cousin . . . ." *Id.* Mr. Perez Llamas stated that he saw Sierra arrive with a shotgun which Sierra used to shoot the victim at a distance of about five or six meters. Mr. Perez Llamas further indicated that he was wounded in the middle finger of his left hand. He said that Sierra fired four times, killing his son.

A statement was also obtained from Elvia Garcia Cortes, the widow of the victim. Appendix N. The statement, taken on August 13, 2007, states that Ms. Garcia Cortes was present at the time of the shooting that and she saw Sierra arrive with a gun and start shooting her husband, striking him first in the chest and then in the head. She stated that after Sierra killed her husband Sierra fled. She, too, was able to identify Sierra from her personal knowledge, stating that "he was the cousin of my husband now deceased, and he lived at the

1  same place where my husband and I lived . . . ." *Id.*

2  In addition to the eyewitness statements that Sierra shot and killed the victim with a
3  shotgun, the police reports and coroner's report verify that the victim was killed by shotgun
4  blasts to the back and head. Furthermore, the murder weapon was recovered at the scene and
5  was identified by the witnesses as the weapon used by Sierra in the homicide.

6  Sierra argues that the witness statements from August 2007 were taken eleven years after
7  the killing and are too remote in time to be reliable. However, each of the statements
8  demonstrate that each of the three witnesses was present at the time and saw the shooting occur.
9  The statements also demonstrates that each witness personally knows Sierra and positively
10 identifies him as the person who shot the victim. Finally, the initial statement of the victim's
11 mother, Ms. Aranda de Perez, was recorded the day following the shooting and she positively
12 identified Sierra as the shooter and includes the same pertinent information that is provided in
13 the 2007 statements. That July 23, 1996, statement is itself more than adequate to establish
14 probable cause to believe that the charged offense has been committed and that Sierra committed
15 it.

16 For the reasons stated above, the court finds that Sierra is subject to surrender to the
17 Government of Mexico pursuant to the terms of an existing and applicable extradition treaty. 18
18 U.S.C. § 3184. Accordingly, Sierra is hereby committed to the custody of the United States
19 Marshal to await the determination by the Secretary of State as to the transfer of Sierra to the
20 representatives of the requesting state.

21 DATED: July 15, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

4